# EXHIBIT 3

# EXHIBIT 3

1  Seth J. Adams, Esq.
2  Nevada State Bar No. 11034
   **WOODBURN AND WEDGE**
3  6100 Neil Road, Suite 500
   Reno, Nevada 89511
4  Telephone: 775-688-3000
   Fax: 775-688-3088
5  Email: sadams@woodburnandwedge.com

6  *Attorney for Plaintiff STRYK GROUP FUND*

FILED

2023 MAR 10 PM 4:11

ANDREA A. FEBRIN
COURT ADMINISTRATOR
THIRD JUDICIAL DISTRICT

Victoria Tovar    DEPUTY

7              **IN THE THIRD JUDICIAL DISTRICT COURT**

8          **IN AND FOR THE COUNTY OF LYON, STATE OF NEVADA**

9

10  STRYK GROUP FUND, a Delaware
    corporation                              Case No. 23-CV-0527
11

12                  Plaintiff,              Dept. I

13  vs.

14  POLYMER80, INC., a Nevada corporation;
    POLYMER80 PROPERTIES, LLC, a
15  Nevada limited liability company; LORAN
    KELLEY, JR., an individual; TWANA
16  KELLEY, an individual; and DOES I
    through X, inclusive,
17

18                  Defendants.

19  _____

20       *EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER AND**

21              **MOTION FOR PRELIMINARY INJUNCTION**

22       COMES NOW Plaintiff, STRYK GROUP FUND, by and through its counsel, Woodburn

23  and Wedge, hereby moves this Court pursuant to NRS § 33.010 and NRCP 65 for the entry of a

24  temporary restraining order ("TRO"), on an *ex-parte* basis, and for the issuance of an order

25  setting of a hearing on a preliminary injunction, which (i) will prohibit Defendants POLYMER

26  80, INC., POLYMER80 PROPERTIES, LLC, LORAN KELLEY, JR., and TWANA KELLEY,

27  from selling, pledging, transferring or otherwise encumbering those assets which SGF has a

28  preexisting security interest in, as well as those other assets of each and all of the Defendants

    which may be utilized as a means of satisfying any judgment SGF may obtain in this case.

This Application and Motion is based upon the memorandum of points and authorities contained below, the Complaint filed by Stryk Group Fund in this case, the accompanying Affidavit of Jeff Edwards in support of this Application and Motion (the "Edwards Affidavit"), any documents of which this Court may take judicial notice, and other evidence that may properly come before this Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    JURISDICTION, VENUE AND PARTIES

1.    Plaintiff Stryk Group Fund ("SGF") is and was at all times relevant to this action, a corporation based in Delaware.

2.    Defendant Polymer80, Inc. ("P80") is and was at all times relevant to this action, a Nevada-based corporation conducting business within Nevada.

3.    Defendant Polymer80 Properties, LLC ("P80 Properties") is and was at all times relevant to this action, a Nevada-based limited liability company operating within Nevada.

4.    Defendant Loran Kelley, Jr. is and was at all times relevant to this action, an individual residing within Nevada,

5.    Defendant Twana Kelley is and was at all times relevant to this action, an individual residing within Nevada.

6.    SGP and each and all of the above-named Defendants entered into certain promissory notes for the repayment of money which were secured by the assets of the Defendants P80 and P80 Properties, which are believed to be located in Lyon County, Nevada, amongst other locations.  The acts and omissions complain herein occurred and caused harm within Lyon County, Nevada, the amount in controversy exceeds $15,000, and therefore this County is the proper venue for this dispute pursuant to NRS § 13.010(1).

### II.    GENERAL ALLEGATIONS

7.    SGF provided $14,210,000.00 in loans to Defendant POLYMER80, INC. ("P80") in the form of two promissory notes; one for $14,000,000.00 and one for $210,000.00 (the "Promissory Notes") on or about October 4, 2022. True and correct copies of the Promissory Notes are attached as **Exhibit "1"** to the Edwards Affidavit. Edwards Affidavit, ¶ 3.

8.      The Promissory Notes are backed by a Security Agreement and a filed UCC Financing Statement as to all assets of P80. A true and correct copy of the Security Agreement is attached as **Exhibit "2"** to the Edwards Affidavit. Edwards Affidavit, ¶ 4.

9.      Co-Defendants POLYMER 80 PROPERTIES, LLC ("P80 Properties"), LORAN KELLEY, JR. and TWANA KELLEY are co-obligors on the Promissory Notes. Edwards Affidavit, ¶ 5.

10.     The Defendants have defaulted under the Promissory Notes by: (1) Defendants' failure to make payments of principal under the Promissory Notes when due, (2) Defendants' failure to deliver monthly financial statements as required by the Promissory Notes, and (3) Defendant P80's sale of accounts receivable and granting security interests in other Collateral (as defined in the above-referenced Security Agreement) to Fundamental Capital, LLC; Ace Funding Source, LLC; and Green Note Capital Partners SPV, LLC in violation of the Security Agreement. Edwards Affidavit, ¶ 6.

11.     As a result of these defaults, SGF caused to be delivered to the Defendants a Notice of Default and Demand for Payment on or about March 7, 2023. Edwards Affidavit, ¶ 7.

12.     The Defendants are jointly and severally liable for the amounts due and owing which are, at a minimum, the combined amounts of the Promissory Notes, $14,210,000.00, less those payments made on the notes. Edwards Affidavit, ¶ 8.

13.     SGF needs immediate injunctive relief preventing the Defendants from transferring, removing, pledging or otherwise encumbering the assets of P80, P80 Properties and the personal assets of Mr. and Mrs. Kelley based upon my personal knowledge of the following actions taken by the Defendants to jeopardize SGF's Security Agreement as well as the assets secured thereby and those assets which would be available for execution if SGF is successful in this case:

      i.      Removed inventory of P80 from Nevada and taken it to Utah where it is being liquidated;

      ii.     Defendant P80 sold accounts receivable and granted security interests in other collateral for loans from Fundamental Capital, LLC, Ace Funding Source, LLC, and Green Note Capital Partners, SPV;

iii.   Defendant P80, in conjunction with Defendant P80 Properties, is in the process of seeking additional funding secured by a certain commercial real property held by P80 Properties located at 134 Lakes Blvd., Dayton, Nevada (the "P80 Facility"); Edwards Affidavit, ¶ 9.

14.   SGF believes, based upon the foregoing and the Defendants' ongoing default and communications, that absent appropriate injunctive relief, the Defendants will continue to diminish the value of the assets available to repay or otherwise seek to make SGF whole and will continue to liquidate, pledge, etc. such assets until they are completely gone. Edwards Affidavit, ¶ 10.

15.   SGF is simply seeking to maintain the status quo until its Complaint can be heard on the merits and judgment is rendered in favor of SGF for the amounts due and owing under the Promissory Notes (and other damages). Edwards Affidavit, ¶ 11.

## III.   LAW AND ARGUMENT

### A.   A Temporary Restraining Order should be Issued to Prevent any Further Harm to Plaintiff.

A TRO should be immediately issued without traditional notice to Defendants because it is clear from specific facts shown by the Complaint and this Application that immediate and irreparable injury, loss, or damage is occurring and will continue to occur absent the issuance of a TRO and/or preliminary injunction. Where irreparable injury will occur before the hearing on the preliminary injunction can be held, NRCP 65(b) provides for the entry of a temporary restraining order. NRCP 65(b) further provides that a temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney if it clearly appears from specific facts shown by affidavit that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. *See* NRCP 65(b).

It is therefore requested that a TRO be issued, and a hearing on the Motion for Preliminary Injunction be set at the earliest possible time but no later than 15 days after the issuance of the TRO, pursuant to NRCP 65(b).

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

///

**B.    A Preliminary Injunction Should be Issued.**

The Supreme Court of Nevada has held that "[a] preliminary injunction is available if an applicant can show a likelihood of success on the merits and a reasonable probability that the non-moving party's conduct, if allowed to continue, will cause irreparable harm for which compensatory damage is an inadequate remedy." *Dangberg Holding Nev. v. Douglas County*, 115 Nev. 129 (1999); NRS 33.010. In considering the issuance of a preliminary injunction, courts also weigh the potential hardships to the relative parties. *University and College System of Nevada v. Nevadans for Sound Government*, 120 Nev. 712 (2005). An injunction may issue when it appears from the complaint that the plaintiff is entitled to the relief requested and at least part of the relief consists of restraining the challenged act. NRS 33.010(1).

**1.    Gryphon is Entitled to a TRO and Preliminary Injunction Because it will Likely be Successful on the Merits of its Case.**

The requested preliminary injunction should be issued because there is a reasonable probability that the Plaintiff will succeed on the merits of its case. NRS 33.010; *Clark County School District v. Buchanan,* 112 Nev. 1146, 1150, (1996).

As is summarized above and supported by the attached Affidavits, Plaintiff has sworn statements from multiple individuals who witnessed the intentional diversion of gold and silver laden carbon to the Ponds during the pendency of Gryphon's bankruptcy. This immensely valuable asset was not disclosed to the Trustee or the to Court and, in conjunction with the other nefarious acts committed by the Defendants with respect to financing, etc., contributed to the downfall of Gryphon. The Affiants, whom were intimately familiar with the Borealis Mine, have each indicated that the Defendants purposely minimized production at the mine while simultaneously hiding gold worth millions of dollars. Waterton cannot have any rational defense to these actions.

Consequently, there is a reasonable probability that Gryphon will succeed on the merits of its claims, and therefore a preliminary injunction should be issued.

///

///

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

2.     **Plaintiff Will Suffer Irreparable Harm if a TRO and Preliminary Injunction are Not Issued.**

The single most important prerequisite for the issuance of preliminary injunction is the demonstration that plaintiff is likely to suffer irreparable harm before a decision on the merits can be rendered.  NRS 33.010(2); *Pickett v. Comanche Construction, Inc.*, 108 Nev. 422, 426, 836 P.2d 42, 44 (1992).    In this case, the irreparable harm is apparent: an estimated $45million of gold was allegedly pumped into the Ponds. If this carbon-laden gold is extracted, converted, and sold, Gryphon and its shareholders may never know the precise value of the gold that was fraudulently removed from the mine and pumped into the Ponds and any recovery for Plaintiff would be even more difficult to quantify.

Additionally, Defendants may mix the Carbon already in the lake with other, "new" carbon such that it would be difficult if not impossible to ascertain the source of the gold or silver contained therein unless an assay is conducted quickly.  In either scenario—removing the gold or covering up its existence—Gryphon stands to suffer irreparable harm in the absence of a TRO or preliminary injunction.

Further, the balance of equities favors the entry of a preliminary injunction.  Defendants will not suffer and significant harm by halting operations at or near the Ponds until the parties' rights can be determined by this Court.  The injunction or TRO does not impede any other of the Defendant's business operations and is only needed for so long as is necessary to conduct an assay and/or core sample and to analyze the results therefrom.

Plaintiff should not be forced to sit by during the pendency of this litigation and watch Defendants continue to convert the $45million of gold fraudulently pumped into the Ponds.  The balance of equities favors the issuance of injunctive relief.

3.     **Any Requirement that Plaintiff Post Security for the Issuance of a Preliminary Injunction in this Case Should be Minimal.**

The issuance of a preliminary injunction will not cause any significant harm to Defendants.  Although NRCP 65 mandates that security in the form of a bond be required for the issuance of a preliminary injunction, the bond required in this case should be minimal.  The express purpose of requiring the posting of a security bond is to protect the defendant only for

1  damages that may be incurred as a result of an injunction that may have been wrongfully issued,

2  but is not for any other damages that may be incurred.  *American Bonding Co. v. Roggen*

3  *Enterprises*, 109 Nev. 588, 592 (1993).

4        Plaintiff, by virtue of seeking a TRO or preliminary injunction, does not intend to impede

5  the legitimate business operations of Defendants and the time needed to conduct a proper assay

6  and/or core sample is expected to be minimal. This short delay in operations is a minor burden

7  to the Defendants in comparison with the complete loss of an opportunity to verify the presence

8  of gold-laden Carbon by Plaintiff should a TRO and injunction not be issued. Therefore, it is

9  requested that Plaintiff be required to post a bond of a relatively small amount given this minimal

10  inconvenience to Defendants.

11                    **IV.    CONCLUSION.**

12        Based on the forgoing, it is respectfully requested that the Court issue a temporary

13  restraining order forbidding the removal, modification, transportation or any other kind of

14  alteration or activity concerning the ponds located at Borealis Mine until such time as Plaintiff

15  may conduct an assay and/or core sample of the Carbon located therein.  It is further requested

16  that, following a hearing on the motion for preliminary injunction, a preliminary injunction be

17  issued accordingly.

18       **IV.    CERTIFICATION OF COUNSEL PURSUANT TO NRCP 65(b)**

19        The undersigned counsel of record for certifies that correspondence was delivered via

20  email on August 1, 2018 as well as a telephone call made to former counsel for Waterton Global,

21  Laura Granier, Esq. As the Defendants have not yet appeared in this case, this was believed to

22  be the best way in which to provide appropriate notice to the Defendants.

23        Because of the urgency of the situation and the short duration sought in this TRO,

24  undersigned counsel believes that it is proper to move without any additional notice as time is of

25  the essence.  Additionally, any delay in the issuance of a TRO and preliminary injunction

26  increases the risk that the Defendants will take further action to remove gold from the Ponds.

27

28

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

Undersigned counsel hereby certifies that he will immediately email copies of this motion and the Verified Complaint to their former counsel upon their filing as well as to any counsel who may appear on their behalf in the future.

**<u>Affirmation</u>**

The undersigned affirms this document does not contain the personal information of any person as defined by NRS 239B.030 and NRS 603A.040.

DATED this 10th day of March, 2023.

WOODBURN AND WEDGE

By: _____
SETH J. ADAMS
Nevada State Bar No. 11034
6100 Neil Road, Suite 500
Reno, Nevada 89511

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

8