# EXHIBIT 4

# EXHIBIT 4

Seth J. Adams, Esq.
Nevada State Bar No. 11034
**WOODBURN AND WEDGE**
6100 Neil Road, Suite 500
Reno, Nevada 89511
Telephone: 775-688-3000
Fax: 775-688-3088
Email: sadams@woodburnandwedge.com

*Attorney for Plaintiff STRYK GROUP FUND*

### IN THE THIRD JUDICIAL DISTRICT COURT

### IN AND FOR THE COUNTY OF LYON, STATE OF NEVADA

| | |
|---|---|
| STRYK GROUP FUND, a Delaware corporation | Case No. 23-CN-0527 |
| Plaintiff, | Dept. I |
| vs. | |
| POLYMER80, INC., a Nevada corporation; POLYMER80 PROPERTIES, LLC, a Nevada limited liability company; LORAN KELLEY, JR., an individual; TWANA KELLEY, an individual; and DOES I through X, inclusive, | |
| Defendants. | |

### <u>APPLICATION FOR PRE-JUDGMENT WRIT OF ATTACHMENT</u>

COMES NOW Plaintiff, STRYK GROUP FUND (hereafter referred to as "<u>SGF</u>"), by and through its counsel, Woodburn and Wedge, hereby applies to the Court for a pre-judgment writ of attachment pursuant to NRS 31.010, *et. seq.* Alternatively, should the Court determine notice is required, SGF seeks a pre-judgment writ of attachment pursuant to NRS31.013. SGF's application is supported by the Declaration of Jeff Edwards in Support of Issuance of Pre-Judgment Writ of Attachment filed concurrently herewith, the following memorandum of points and authorities, all papers and pleadings on file herein, and any oral argument allowed at the time of the hearing.

# POINTS AND AUTHORITIES

## I.    Introduction

1.  SGF has provided over $14 million in loans to the Defendants on a joint and several basis. The Defendants have defaulted on their repayment obligations as well as have recently undertaken to transfer, sell, and attempt to pledge their assets in such a way that SGF fears it will be without a means of recovery outside of Judicial intervention.

## II.    Legal Standard

2.    NRS § 31.010 provides that a plaintiff may apply for a writ of attachment at the time of issuing the summons, or at any time thereafter, on the defendant's property to serve as security for the satisfaction of any judgment that may be recovered. A writ of attachment may be issued without notice and hearing in an action where the "defendant is about to give, assign, hypothecate, pledge, dispose of or conceal the defendant's money or property or any part thereof and the defendant's money or property remaining in this State or that remaining unconcealed will be insufficient to satisfy the plaintiff's claim." NRS § 31.017(5).

3.    Alternatively, the remainder of NRS § 31.013 provides that a pre-judgment writ of attachment may issue where:

The court may after notice and hearing, order the clerk to issue a writ of attachment in the following cases:

(1). In an action upon a judgment or upon a contract, express or implied, for the direct payment of money:

(a) If the judgment is not a lien upon or the contract is not secured by mortgage, lien or pledge upon real or personal property situated in this state; or

(b) If such lien or security has, without any act of the plaintiff or the person to whom the security was given, become valueless or insufficient in value to secure the sum due the plaintiff, in which case the attachment shall issue only for the unsecured portion of the amount due the plaintiff, which is equal to the excess of the amount due the plaintiff above the value of the security.

(2.)  In any case where the attachment of the property of the defendant is allowed pursuant to this chapter or other provision of law.

(3).  In any other case where the court finds that extraordinary circumstances exist which will make it improbable for the plaintiff to reach the property of the defendant by execution after the judgment has been entered.

4.      NRS § 31.020 requires applications for an order for a Writ of Attachment be accompanied by an affidavit of the plaintiff or any other person having personal knowledge of the facts constituting one or more of the grounds for attachment. Importantly, the affidavit must:

(a) Set forth clearly the nature of the plaintiff's claim for relief and that the same is valid.

(b) Set forth the amount which the affiant believes the plaintiff is entitled to recover from the defendant, and if there is more than one plaintiff or more than one defendant, the amount the affiant believes each plaintiff is entitled to recover or the amount that the plaintiff is entitled to recover from each defendant.

(c) Describe in reasonable and clear detail all the facts which show the existence of any one of the grounds for an attachment without notice to the defendant.

(d) Describe in reasonable detail the money or property sought to be attached and the location thereof if known.

(e) If the property sought to be attached is other than money, set forth to the best knowledge and information of the affiant, the value of such property less any prior liens or encumbrances.

(f) Name all third persons upon whom a writ of garnishment in aid of the writ of attachment will be served.

(g) In an action upon a foreign judgment attach a copy of the judgment to the affidavit for attachment as an exhibit.

(h) State whether, to the best information and belief of the affiant, the money or property sought to be attached is exempt from execution.

III.     **Factual Allegations**

5.      SGF's Application is based on the following facts (contained in the Affidavit of Jeff Edwards filed with this Application (the "Edwards Affidavit"):

6.      SGF provided $14,210,000.00 in loans to Defendant POLYMER80, INC. ("P80") in the form of two promissory notes; one for $14,000,000.00 and one for $210,000.00 (the "Promissory Notes") on or about October 4, 2022. The Promissory Notes are backed by a Security Agreement and a filed UCC Financing Statement as to all assets of P80. Edwards Affidavit, ¶ 3.

6.    True and correct copies of the Promissory Notes and the Security Agreement are attached to the Edwards Affidavit as **Exhibits "1" and "2"** respectively. Edwards Affidavit, ¶ 4.

7.    Co-Defendants POLYMER 80 PROPERTIES, LLC ("P80 Properties"), LORAN KELLEY, JR. and TWANA KELLEY are co-obligors on the Promissory Notes. Edwards Affidavit, ¶ 5.

8.    The Defendants have defaulted under the Promissory Notes by: (1) Defendants' failure to make payments of principal under the Promissory Notes when due, (2) Defendants' failure to deliver monthly financial statements as required by the Promissory Notes, and (3) Defendant P80's sale of accounts receivable and granting security interests in other Collateral (as defined in the above-referenced Security Agreement) to Fundamental Capital, LLC; Ace Funding Source, LLC; and Green Note Capital Partners SPV, LLC in violation of the Security Agreement. Edwards Affidavit, ¶ 6.

9.    As a result of these defaults, SGF caused to be delivered to the Defendants a Notice of Default and Demand for Payment on or about March 7, 2023. A true and correct copy of the Notice of Default is attached to the Edwards Affidavit as **Exhibit "3"**. Edwards Affidavit, ¶ 7.

10.    The Defendants are jointly and severally liable for the amounts due and owing which are, at a minimum, the combined amounts of the Promissory Notes, $14,210,000.00. Edwards Affidavit, ¶ 8.

11.    SGF has a valid claim for the monies owed by the Defendants and has been forced to retain legal counsel and pursue this legal action as a result of the Defendants' failure to cure the aforementioned defaults. Edwards Affidavit, ¶ 9.

**B.    Amount Affiant Believes the Plaintiff is Entitled to Recover from the Defendants.**

12.    As stated above, SGF loaned $14,210,000.00 to the Defendants based upon the Promissory Notes. To-date, the Defendants have made six installment payments of $83,333.33 each on Note #1 and have paid Note #2 down to approximately $180,000.00. Edwards Affidavit, ¶ 10.

13.    Additionally, SGF has incurred additional fees and costs associated with the Defendants' defaults, including, but not limited to, attorneys' fees and costs in noticing the defaults as well as commencing this action in an amount which will continue to increase and for which SGF, in due course, will memorialize in an appropriately filed memorandum of costs. Edwards Affidavit, ¶ 11.

14.    SGF has learned, both in communications with the Defendants as well as through other means, that the Defendants have:

i.    Removed inventory of P80 from Nevada and taken it to Utah where it is being liquidated;

ii.    Defendant P80 sold accounts receivable and granted security interests in other collateral for loans from Fundamental Capital, LLC, Ace Funding Source, LLC, and Green Note Capital Partners, SPV;

iii.    Defendant P80, in conjunction with Defendant P80 Properties, is in the process of seeking additional funding secured by a certain commercial real property held by P80 Properties located at 134 Lakes Blvd., Dayton, Nevada (the "P80 Facility"); Edwards Affidavit, ¶ 12.

15.    Plaintiff SGF seeks to attach the following assets of the Defendants:

i.    The P80 Facility located at 134 Lakes Blvd., Dayton, Nevada;

ii.    All remaining assets of P80 located at the P80 Facility, including, but not limited to, inventory, unfinished goods, materials, equipment, and all other assets of any other category;

iii.    All assets, including inventory and materials, which have been transferred to the state of Utah by and at the direction of the Defendants (believed to be located in Salt Lake City, Utah);

iv.    All intellectual property owned by Defendant P80, including patents, trademarks, etc.;

v.    Any funds remaining in the Defendants' deposit accounts, including, but not limited to, those accounts at the following financial institutions:

Stockman Bank (3 Accounts) – 402 N. Broadway, Billings, MT 59101

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

5

Central Bank, 415 N. State Street, Orem, UT 84057

Greater Nevada Credit Union, 4131 N. Carson St., Carson City, NV 89706

vi.    The real property commonly known as 1136 E. Appion Way, Carson City, Nevada owned by Defendants Loran Kelley, Jr. and Twana Kelley.

vii.    All other non-exempt personal and real property owned by Defendants Loran Kelley, Jr. and Twana Kelley of any character.

16.    At present, with respect to the P80 Facility, on information and belief, SGF believes that the real property is worth $2,700,000.00 and is encumbered by a first mortgage in the approximate amount of $470,000.00, leaving $2,230,000.00 in available equity SGF is entitled to attach. Edwards Affidavit, ¶ 14.

17.    As for the inventory and all other assets of P80 located at the P90 Facility, SGF believes that the approximate value is $4,000,000.00 which are subject to UCC Financing Statements, both as to specific equipment (in favor of lenders who provided purchase money financing for such equipment) as well as two other, "all assets" UCC Financing Statements in favor of other creditors besides SGF. On information and belief, the summary, attached to the Edwards Affidavit as **Exhibit "4"** is a true and correct summary of the encumbrances on P80's assets. Edwards Affidavit, ¶ 15.

18.    As for the assets which have been relocated to Utah referenced above, as well as any cash in accounts, SGF is unable to approximate a value at this time absent additional information but does believe that both categories of assets would be encumbered by the same UCC Financing Statements, including that in favor of SGF, listed in the attached Exhibit. Edwards Affidavit, ¶ 16.

19.    There will not be writs of garnishment served to aid in the writ of attachment. To the extent there are, the specific identities of the third persons are unknown at this time. Edwards Affidavit, ¶ 17.

20.    This is not an action based upon a Foreign Judgment. Edwards Affidavit, ¶ 18

21.    On information and belief, SGV not believe that any of the property of P80 or P80 Properties is exempt from execution. SGV is unable to ascertain whether the property of Defendants Mr. and Mrs. Kelley is exempt from execution at this time.

**IV.    Argument**

22.    Here, a pre-judgment writ of attachment should be granted pursuant to NRS § 31.017 because Defendant P80 has already been actively engaged in marketing and selling its assets and what are believed to be liquidation prices outside of Nevada.  Nevada law provides attachment of the proceeds from a sale of property.  Indeed, NRS §31.130 states:

> Whenever property has been taken by an officer under a writ of attachment, and it is made to appear satisfactorily to the court, or a judge thereof, that the interest of the parties to the action will be subserved by a sale thereof, the court or judge may order such property to be sold in the same manner as property is sold under an execution, and the proceeds to be deposited in the court to abide the judgment of the action. Such order can be made only upon notice to the adverse party or the adverse party's attorney.

23.    SGF is prepared to make a written undertaking for the property being attached in accordance with NRS §31.030.  SGF  is prepared to provide sureties in the amount determined by the Court  While this might not equal the amount of SGF damages, the Nevada Supreme Court has held that bonds which do not equal the amount of attached property can still be valid when the amount of damages is uncertain.  *See Juan Gabriel Shows, LLC v. CME Enterprises, Inc.*, 124 Nev. 1483, 238 P.3d 828 (2008).  In that case, CME Enterprises hired a musical performer, Juan Gabriel, for a Cinco De Mayo festival.  When Gabriel did not appear, CME filed suit for damages to be proven at trial.  CME was granted a writ of attachment on Gabriel's only asset in Nevada, which was a bank account.  The Court ordered CME to post a bond of $10,000.00, because at the time, the amount in the bank account was unknown. *Id.*

24.    SGF believes that any sureties required will more than adequately protect the Defendants given that there is no question whether default has occurred on the amount due and that such outstanding balance easily exceeds the value of the known assets of the Defendants.

25.    Furthermore, given the transfer and sale of assets of the Defendants over State Lines (specifically, in Utah), as well as the ongoing efforts to pledge and leverage the same and

1    other assets to third-parties, grounds exist for this Court to issue SGF a prejudgment writ without

2    notice pursuant to NRS §31.022.

3        26.      Alternatively, should the Court determine that notice and hearing is required

4    and/or appropriate pursuant to NRS §31.024, SGF will make every effort possible to comply

5    with the noticing requirements in support of the Court's order to show cause and will provide

6    documentation of such efforts in advance of any hearing.

7    **V.     Conclusion**

8        Based on the foregoing, SGF requests that this Court enter an order directing the

9    Clerk to issue a Writ of Attachment without notice on the assets listed above. Alternatively, SGF

10    requests that this Court enter an order directing the Clerk to issue a Writ of Attachment in

11    accordance with NRS 31.013.

12                         **<u>Affirmation</u>**

13        The undersigned affirms this document does not contain the personal information of

14    any person as defined by NRS 239B.030 and NRS 603A.040.

15        DATED this *10* day of March, 2023.

16                              WOODBURN AND WEDGE

17

18              By: _____

19                       SETH J. ADAMS

                              Nevada State Bar No. 11034

20                       6100 Neil Road, Suite 500

                              Reno, Nevada 89511

21

22

23

24

25

26

27

28